UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
BALANCE POINT DIVORCE FUNDING, LLC,

                      Plaintiff,                    13-cv-1049 (PKC)

        -against-                   MEMORANDUM
                                                AND ORDER

TIMOTHY D. SCRANTOM, JURIDICA
CAPITAL MANAGEMENT LIMITED,
JURIDICA CAPTIAL MANAGEMENT (US)
INC., and JURIDICA INVESTMENTS
LIMITED,

                      Defendants.
-------------------------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-6-15

CASTEL, U.S.D.J.

        Defendants Juridica Capital Management Limited, Juridica Capital Management

(US) Inc., and Juridica Investments Limited (collectively, "Juridica") are the prevailing parties in

this action and are entitled to the taxation of costs in their favor. Rule 54(d), Fed. R. Civ. P. The

costs to which a prevailing party is entitled are limited to those costs enumerated in 28 U.S.C. §

1920. Juridica has moved for judicial review of the Clerk's denial of the costs of electronic

discovery and deposition transcripts. The taxation of costs associated with electronic discovery

has not been addressed at length in reported decisions of courts within this Circuit.

        For reasons explained, the motion is granted to the extent that the Court concludes

that costs of the conversion of native files into digital images, in this case TIFF format, of

documents actually produced to a requesting party and certain costs associated with uploading

and transferring those documents, in this case to FTP, are taxable as "the costs of making copies

of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. §

1920(4). Other costs associated with the electronic discovery process are disallowed. Thus, the

Clerk is ordered to tax $493.97 in costs in favor of Juridica in addition to the $690.00 previously awarded to Juridica for costs for fees of the Clerk and fees for service of summons and subpoena. The Court otherwise denies Juridica's application.

BACKGROUND

Plaintiff Balance Point Divorce Funding, LLC ("Balance Point") brought this action against defendants Juridica and Timothy D. Scrantom, asserting claims of tortious interference with contract, tortious interference with business relations, and misappropriation of trade secrets.  Juridica and Scrantom filed motions to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., and the Court dismissed plaintiff's tortious interference with contract claim.  Balance Point Divorce Funding, LLC v. Scrantom, 978 F. Supp. 2d 341 (S.D.N.Y. 2013).  The parties conducted discovery as to the remaining claims and by letter dated September 19, 2014, plaintiff informed the Court of its intention to voluntarily dismiss the action with prejudice.  Pursuant to Rule 41(a)(2), Fed. R. Civ. P., the Court entered an Order of voluntary dismissal of the action against all defendants with prejudice and directed the Clerk to tax costs in favor of the defendants.  (Docket # 120.)

On October 21, 2014, Juridica submitted a Bill of Costs in the amount of $50,913.74.  The Clerk awarded Juridica $690.00 in costs for fees of the Clerk and fees for service of summons and subpoena.  (Docket # 124.)  The Clerk declined to award $43,140.95 in costs associated with electronic discovery, which Juridica categorized as "[f]ees for exemplification and copies of papers necessarily obtained for use in the case."  (Id.)  The Clerk also declined to award $7,082.79 in costs for copies of deposition transcripts.  (Id.)  Juridica categorized the deposition transcript costs as "[f]ees of the court reporter for all or any part of the

transcript necessarily obtained for use in the case." (Id.) Juridica requests that the Court review

the Clerk's denial of costs and award Juridica costs in the amount of $50,913.74.

DISCUSSION

I.      Legal Standard

Federal Rule of Civil Procedure 54(d)(1) states "[u]nless a federal statute, these

rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed

to the prevailing party." Under Rule 54(d)(1) the "[C]lerk may tax costs on 14 days' notice" and

the district court, on timely motion made, may review the action of the Clerk. "Where an

unsuccessful litigant appeals the Clerk of the Court's award of costs, the district court reviews

the award de novo." Karmel v. City of New York, No. 00-CV-9063 (KMK), 2008 WL 216929,

at *1 (S.D.N.Y. Jan. 9, 2008) (citing Whitfield v. Scully, 241 F.3d 264, 269 (2d Cir. 2001) ("A

district court reviews the clerk's taxation of costs by exercising its own discretion to decide the

cost question itself.") (internal quotation marks and citations omitted)). Although the decision

whether to award costs is within the district court's discretion, "federal courts have no authority

to award costs in excess of statutory limits." Carmody v. City of New York, No. 05 Civ. 8084

(HB), 2008 WL 3925196, at *1 (Aug. 26, 2008) (citing Crawford Fitting Co. v. J.T. Gibbons,

Inc., 482 U.S. 437, 445 (1987)).

Interpreting Rule 54(d)(1), "the Supreme Court has held that the term 'costs'

includes only the specific items enumerated in 28 U.S.C. § 1920 (1994)." Whitfield, 241 F.3d at

269 (citations omitted). 28 U.S.C. § 1920 contains six categories of taxable costs: (1) fees of the

clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained

for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for

exemplification and the costs of making copies of any materials where the copies are necessarily

obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of

court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of

special interpretation services under 28 U.S.C. § 1828.  Thus, "the discretion granted by Rule

54(d) . . . is solely the power to decline to tax, as costs, the items enumerated in § 1920."

Taniguchi v. Kan Pac. Saipan, Ltd., 132 S. Ct. 1997, 2006 (2012) (internal quotation marks and

citations omitted).

   "Local Civil Rule 54.1 further outlines those costs which are taxable in the

Southern District of New York."  Karmel, No. 00-CV-9063 (KMK), 2008 WL 216929, at *1

(S.D.N.Y. Jan. 9. 2008).  Several judges of this Court have read Local Civil Rule 54.1 as merely

imposing supplemental constraints on Courts when awarding costs specifically discussed therein.

See In re Omeprazole Patent Litig., Nos. M-21-81 (BSJ), 00 Civ. 6749 (BSJ), 03 Civ. 6057

(BSJ), MDL Docket No. 1291, 2012 WL 5427849, at *2-3 (S.D.N.Y. Nov. 7, 2012); Universal

City Studios, Inc. v. Nintendo Co., Ltd., No. 82 Ci. 4259 (RWS), 1986 WL 11462, at *2

(S.D.N.Y. Oct. 6, 1986) (construing the Southern District of New York's former Local Rule

11(c)(5) which governed taxation of costs for "Exemplification and Copies of Papers").  But see

Carmody v. City of New York, No. 05 Civ. 8084 (HB), 2008 WL 3925196, at *1 (S.D.N.Y. Aug.

26, 2008) (limiting the costs taxable in this district to those which the Local Civil Rule

addresses).  This Court concludes that Local Civil Rule 54.1 governs to the extent that the Local

Rule addresses a particular cost; however, if the Local Rule does not speak to a specific cost,

then the Court must apply 28 U.S.C. § 1920's more expansive standard.

   Furthermore, taxing costs pursuant to Rule 54(d)(1), 28 U.S.C. § 1920, and Local

Rule 54.1 in favor of the prevailing party is the rule, not the exception, in civil litigation.  See

Whitfield, 241 F.3d at 270 (citation omitted).  "For this reason, the losing party has the burden to

show that costs should not be imposed" and, "[i]n light of the general rule, when a prevailing

party is denied costs, a district court must articulate its reasons for doing so."  Id. (citation

omitted).

        The Court recognizes that Rule 26(b)(2)(B), Fed. R. Civ. P., allows a party to

decline to produce electronically stored information in response to an opposing party's discovery

request so long as the objecting party shows that the requested "information is not reasonably

accessible because of undue burden or cost."  If the requesting party shows good cause for the

discovery request, the Court may order the party from whom discovery is sought to produce the

information.  Here, Juridica did not make any Rule 26(b)(2)(B) objections to Balance Point's

discovery requests.  The Court, in this opinion, limits its decision to the issue of whether

Juridica's deposition and electronic discovery costs may be taxed pursuant to Rule 54(d)(1), Fed.

R. Civ. P., 28 U.S.C. § 1920, and Local Civil Rule 54.1.

    II.     Prevailing Party

        Here, Juridica is a prevailing party for purposes of taxing costs pursuant to Rule

54(d).  By letter dated September 19, 2014, Balance Point informed the Court of its intention to

voluntarily dismiss the lawsuit against all defendants with prejudice.  (Docket # 110.)

Subsequently, the Court dismissed the action with prejudice pursuant to Rule 41(a)(2), Fed. R.

Civ. P., and directed the Clerk to tax costs in favor of the defendants.  (Docket # 120.)

        A "prevailing party" under Rule 54(d) is one who achieves a "'judicially

sanctioned change in the legal relationship of the parties'" in its favor.  Dattner v. Conagra Foods

Inc., 458 F.3d 98, 101 (2d Cir. 2006) (quoting Buckhannon Bd. & Care Home, Inc., v. W. Va.

Dep't of Health and Human Res., 532 U.S. 598, 605 (2001) (construing fee-shifting statutes)).  A

voluntary dismissal of an action with prejudice satisfies the Buckhannon test "because it

constitutes 'an adjudication on the merits for purposes of *res judicata*' and any action so dismissed could not be brought again."  Carter v. Inc. Village of Ocean Beach, 759 F.3d 159, 165 (2d Cir. 2014) (quoting Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 345 (2d Cir. 1995)); see also Power Mosfet Techs., L.L.C. v. Siemens AG, 378 F.3d 1396 (Fed. Cir. 2004) (holding that where a plaintiff voluntarily dismissed its case against one defendant with prejudice, that defendant was a prevailing party under Rule 54(d), Fed. R. Civ. P.); Mother & Father v. Cassidy, 338 F.3d 704, 708 (7th Cir. 2003) ("[A] voluntary dismissal with prejudice renders the opposing party a 'prevailing party' within the meaning of Rule 54.").  Therefore, because the action was voluntarily dismissed against Juridica with prejudice, Juridica is a "prevailing party" under Rule 54(d)(1).

III.    Costs

As a prevailing party under Rule 54(d)(1), Juridica argues that they are entitled to $43,140.95 in costs associated with the production of electronically stored information ("ESI") in response to Balance Point's discovery requests.  Juridica argues that the electronic discovery costs constitute "fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case" and are therefore taxable under 28 U.S.C. § 1920(4).  For the reasons explained below, the Court concludes that the conversion of native files into TIFF format is analogous to "making copies" and, therefore, Juridica's costs of TIFF conversion of documents actually produced to Balance Point may be taxed.  Additionally, Juridica may recover costs of uploading responsive documents through the use of a File Transfer Protocol ("FTP").  The Court further declines to award the remaining charges associated with electronic discovery because those costs are not recoverable as costs of "making copies" under section 1920(4).

In addition to costs associated with electronic discovery, Juridica requests $7,082.79 for deposition transcripts.  Juridica argues that the costs of deposition transcripts are awardable as "fees for printed or electronically recorded transcripts necessarily obtained for use in the case" under 28 U.S.C. § 1920(2).  For reasons that will be explained, the Court declines to award costs for deposition transcripts to Juridica.

a.  Electronic Discovery Costs

Juridica urges the Court to award the Juridica-related defendants various costs associated with electronic discovery.  Juridica asserts that each step of the electronic document production process, including the gathering, review, processing, and copying of ESI in response to Balance Point's discovery requests,[1] are recoverable as costs under 28 U.S.C. § 1920(4).  Specifically, Juridica requests an award of costs for Processing Initial Dataset, Hosting Active Data, culling and posting the resulting data subset, Optical Character Recognition processing, project management, ID and conversion of non-searchable documents to searchable formats, data collection, document production upload to FTP, electronic embedding, importing images to ViewPoint, document unitization, creation of a defensibility binder, and TIFF conversion.  (Aff. of Robert D. MacGill in Supp. of the Juridica-Related Defs.' Bill of Costs Ex. B.) [hereinafter "MacGill Aff."].

Prior to Congress's amendment of 28 U.S.C. § 1920(4) in 2008, section 1920(4) authorized the taxation of "[f]ees for exemplification and copies of papers necessarily obtained for use in the case."  28 U.S.C. § 1920(4) (2007).  In 2008, Congress substituted the phrase "the costs of making copies of any materials where the copies are" in place of the phrase "copies of

---

[1] At oral argument, Juridica referenced the electronic document production process outlined in CBT Flint Partners, LLC v. Return Path, Inc., 737 F.3d 1320 (Fed. Cir. 2013), and argued that costs associated with each step of that process are taxable under section 1920(4).  Although Juridica referred to this process as involving five steps, the Federal Circuit in CBT Flint actually described the process as involving three stages.

papers" in 28 U.S.C. § 1920(4).  Juridica conceded at oral argument before this Court on

February 5, 2015, that, prior to the 2008 amendment, costs for the gathering, review, processing

and, and copying of ESI were not taxable under section 1920(4).  The Court agrees with the

parties that the effect of the 2008 amendment's addition of the word "materials" to section

1920(4) was to allow for the taxation of the costs of making copies of digital or electronically

stored information.  See Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158, 166

(3d Cir. 2012) ("The most recent amendment to the statute, however, permitting an award to the

prevailing party of the cost of making copies of 'materials,' plainly signifies that [section]

1920(4)'s allowance for copying costs is not limited to paper copying.").  At oral argument,

however, Juridica argued that the 2008 amendment altered the standard to be applied when

considering which costs for various aspects of the document production process may be taxed

under section 1920(4); Juridica insisted that the 2008 amendment instituted a meaningful change

to the text of the statute and allows for the taxation of costs for the gathering, review, processing,

and copying of ESI.  The Court disagrees.

          i.   "Fees for Exemplification"

          First, the Court considers Juridica's argument that the 2008 amendment provides

an implicit understanding that the term "fees for exemplification" incorporates the various steps

and processes that are involved in the production of ESI materials.  In Race Tires, the Third

Circuit met and rejected a similar argument, differentiating between the terms "exemplification"

and "making copies."  674 F.3d at 165-66.  The Third Circuit noted that courts have come to

different conclusions about the meaning of the term "exemplification."  Id. at 166.  Interpreting

Sixth Circuit law, the Federal Circuit in Kohus v. Cosco, Inc., 282 F.3d 1355, 1359 (Fed. Cir.

2002), applied the narrow definition of exemplification as "[a]n official transcript of a public

record, authenticated as a true copy for use as evidence," quoting Black's Law Dictionary 593

(7th ed. 1999).[2]  In contrast, the Seventh Circuit has applied a broader definition of

"exemplification" as "the act of illustration by example . . . broad enough to include a wide

variety of exhibits and demonstrative aids."  Race Tires, 674 F.3d at 166 (quoting Cefalu v. Vill.

of Elk Grove, 211 F.3d 416, 427 (7th Cir. 2000) (citing Merriam-Webster's Collegiate

Dictionary 406 (10th ed. 1993)).  This Court agrees with the Third Circuit's conclusion that

> [t]here is no need to decide whether Congress used the term
> 'exemplification' in its narrow 'legal sense,' or in the broader
> sense adopted by the Seventh Circuit.  The electronic discovery
> vendors' work in this case did not produce illustrative evidence or
> the authentication of public records.  Their charges accordingly
> would not qualify as fees for 'exemplification' under either
> construction of the term.

Id.  Juridica offered no support from any court within this Circuit for the proposition that

expenses for the production of ESI in response to a discovery request may be taxed as "fees for

exemplification" under section 1920(4).

> ii.  "Costs of making copies of any materials necessarily
> obtained for use in the case"

Although the 2008 amendment to section 1920(4) indisputably broadened the

application of the statute to allow Clerks to tax costs for making copies of materials other than

papers, the amendment did not substantially alter the standard for which aspects of the copying

process may be taxed as "copies" under 28 U.S.C. § 1920(4).  The Supreme Court has held that

taxable costs under section 1920 are "modest in scope" and "limited to relatively minor,

incidental expenses."  Taniguchi, 132 S.Ct. at 2006.  Furthermore, the Supreme Court has been

---

[2] The most recent edition of Black's Law Dictionary provides the same definition.  Black's Law Dictionary 692 (10th ed. 2014).

reluctant to "stretch the ordinary meaning of the cost items Congress authorized in § 1920." Id. (holding that "compensation of interpreters" in section 1920(6) does not include the cost of document translation).  The 2008 amendment to section 1920(4) did not so significantly change the meaning of the statute to allow for the taxation of costs for the gathering, review, processing, and copying of ESI when, prior to the amendment, the statute limited recovery to costs for "copies of papers" at the exclusion of other costs associated with those copies.  See, e.g., CBT Flint Partners, LLC v. Return Path, Inc., 737 F.3d 1320, 1326 (Fed. Cir. 2013) (citing the preamendment general principle that "section 1920(4) 'allows recovery only for the reasonable costs of actually duplicating documents, not for the cost of gathering those documents as a prelude to duplication'") (citing Allen v. U.S. Steel Corp., 665 F.2d 689, 697 n. 5 (5th Cir. Unit B 1982)).  To allow for the taxation of costs for the gathering, review, processing, and copying of any material would expand the scope of the statute beyond "relatively minor, incidental expenses."  Analyzing the effect of the 2008 amendment's insertion of the phrase "the cost of *making copies* of any materials" (emphasis added), the Federal Circuit, applying Eleventh Circuit law, explained:

> [b]ut that language leaves for the courts the task of defining what constitutes 'making copies' for purposes of sifting the activities that go into producing electronic documents.  For that crucial task, we see no significance in the change from 'copies' to 'making copies,' a change that appears to reflect no more than the linguistic aim of using activity-describing phrases ('exemplification,' 'making copies') on both sides of the conjunction in section 1920(4).

CBT Flint, 737 F.3d at 1326.  See also, Race Tires, 674 F.3d at 170 (concluding that although the 2008 amendment to section 1920(4) substituted "materials" for "papers," the statute "still requires copying" (internal citations and quotation marks omitted)).  Thus, the 2008 amendment

provided for the taxation of costs of making copies of non-paper documents; however, the addition of the word "making" to precede "copies" did not significantly alter the standard for allowing taxation of costs for processes other than the actual duplication of any materials. Accordingly, the Court next considers which steps in the process of producing electronically stored information may be considered "making copies" under section 1920(4).

The Court concludes that, of Juridica's requested costs, costs of converting native files to TIFF are considered "costs of making copies of any materials" under section 1920(4). Electronic documents may be stored as images in a static format, such as TIFF or PDF.  Sedona Conference, The Sedona Conference Glossary: E-Discovery & Digital Information Management 15 (4th ed. Apr. 2014) [hereinafter "Sedona Conference Glossary"].  TIFF, or Tagged Image File Format, is "[a] widely used and supported graphic file formats for storing bit-mapped images, with many different compression formats and resolutions."  Id. at 46.  In contrast, the PDF, Portable Document Format, is "[a] file format technology developed by Adobe Systems to facilitate the exchange of documents between platforms regardless of originating application by preserving the format and content."  Sedona Conference Glossary at 35.  If stored in TIFF format, "[i]mages are stored in tagged fields, and programs use the tags to accept or ignore fields, depending on the application."  Id. at 46.  By converting a native image into a different format, such as TIFF, one has simply duplicated the image and provided a new, modified copy. Courts that have considered the issue commonly agree that costs for the conversion of native files to TIFF are taxable as "making copies" under section 1920(4).  See Race Tires, 674 F.3d at 167 (holding that the conversion of native files to TIFF is generally recognized as "making copies of material"); Country Vintner of North Carolina, LLC v. E. & J. Gallo Winery,Inc., 718 F. 3d 249, 261 (4th Cir. 2013) (holding that the conversion of native files to TIFF constitutes

"making copies" under section 1920(4)); <u>CBT Flint</u>, 737 F.3d at 1329 (recognizing that TIFF

conversion is a step "fairly considered costs of making copies of the requested documents").

Balance Point concedes that costs for the conversion of native files to TIFF

format may be taxed under section 1920(4); however, Balance Point argues that, of the electronic

discovery costs the Court finds taxable under section 1920(4), only the costs for documents

actually produced by Juridica are recoverable.  The Court agrees.

Both in a paper-only world and in the world of ESI, a party is not required to

make copies of documents or ESI for the requesting party.  The producing party has the option of

producing materials for inspection by the requesting party and the requesting party need not

request copies of the documents produced.  Here, in fact, Balance Point requested that all paper

documents "be produced in hard copy, or, in the alternative, as scanned, .TIFF with a load file."

(First Req. of Pl. Balance Point to Juridica Defs. For the Produc. of Docs. 2.)  A party may

recover costs for making copies of requested documents in a particular format when the

requesting party requests that the documents be produced in that particular format.  <u>See CBT</u>

<u>Flint Partners</u>, 737 F.3d at 1328.  However, "only the costs of creating the produced duplicates

are included, not a number of preparatory or ancillary costs commonly incurred leading up to, in

conjunction with, or after duplication."  <u>Id.</u>  Furthermore, if a party converts a set of documents

to TIFF before reviewing the documents and removing from the subset those which are not to be

produced, then the conversion to TIFF of the non-produced documents was not "making copies

of any materials where the copies are necessarily obtained for use in the case" under section

1920(4).  A party has the ability to review and cull documents in their native format and

subsequently convert to TIFF only those documents that are to be produced.  If it elects to

convert all documents to a TIFF format for its own convenience, it may not recover as a taxable

cost the cost of converting to TIFF those documents which were not actually produced.  This view is consistent with the Federal Circuit's analysis in <u>CBT Flint</u>.  737 F.3d at 1330 ("[I]f a vendor does its chargeable work (*i.e.*, work covered by the statute if performed on a single document) on a large volume of documents *before* culling to produce only a subset, the awarded copying costs must be confined to the subset actually produced.").

       Moreover, although costs for TIFF conversion may be taxable as "costs of making copies of any materials" under section 1920(4), the copies must have been "necessarily obtained for use in the case" in order to be taxable under the statute.  In the world of non-electronic discovery, photocopying costs may be awarded if the prevailing party copied materials in order to respond to an opposing party's discovery request.  <u>See, e.g.</u>, <u>In re Omeprazole Patent Litig.</u>, Nos. M-21-81 (BSJ), 00 Civ. 6749 (BSJ), 03 Civ. 6057 (BSJ), MDL Docket No. 1291, 2012 WL 5427849, at *8 (S.D.N.Y. Nov. 7, 2012) (awarding photocopying costs of documents produced by the prevailing party in response to opposing counsel's discovery requests); <u>U.S. Equal Emp't Opportunity Comm'n v. W&O, Inc.</u>, 213 F.3d 600, 623 (11th Cir. 2000) (concluding that copies of documents produced pursuant to a discovery request, so long as they were necessarily obtained for use in the case, are copies recoverable under §1920(4)) (citing <u>U.S. for the Use & Benefit of Evergreen Pipeline Constr. Co, Inc. v. Merritt Meridian Constr. Corp.</u>, 95 F.3d 153, 173 (2d Cir. 1996)).  The Court is satisfied that the documents that Juridica converted from their native formats to TIFF in response to Balance Point's discovery request and actually produced to Balance Point were "necessarily obtained for use in the case."  28 U.S.C. § 1920(4).  Juridica produced 16,630 pages of documents in TIFF format to Balance Point.  (Pl. Mem. of Law in Opp'n to Def. Juridica's Mot. to Reconsider Clerk's Entry on Bill of Costs 8.)  Accordingly, the Clerk may tax $335.93 in favor of Juridica for the costs of TIFF conversion of 16,630 pages at a

rate of $0.02 per page, plus a 1.00 percent sales tax.[3]  In addition, Juridica may recover $6.54 for

the conversion of 324 documents from PDF to TIFF at a rate of $0.02 per page, plus a 1.00

percent sales tax.  (MacGill Aff. Ex. B.)

Furthermore, Juridica's costs for "Document/Production Upload to FTP" may be

taxed as "costs of making copies of any materials necessarily obtained for use in the case."

§1920(4).  FTP is "an internet protocol that governs the transfer of files between computers over

a network or the Internet."  Sedona Conference Glossary at 20.  Copying electronic documents to

a production media is a necessary component of the electronic discovery process and costs for

various methods of transferring files to a production media have been taxed by courts pursuant to

section 1920(4).  See, e.g., CBT Flint, 737 F.3d at 1332 (analyzing electronic discovery

processes under section 1920(4) and concluding that "the costs of copying responsive documents

to production media are recoverable under 1920(4)"); Country Vintner, 718 F.3d at 261 (holding

that "the transfer of files onto CDs[] constituted 'making copies' under § 1920(4)"); Bonillas v.

United Air Lines Inc., No. C-12-06574(EDL), 2014 WL 7247215, at *3 (N.D.Cal. Dec. 19,

2014) (determining that costs for loading final production onto an FTP site are recoverable under

section 1920(4)).  In the case of hard-copy paper documents, a delivery charge could be avoided

by physically travelling to the producing party's office and picking up the documents.  That is

not feasible in the case of a TIFF file; a delivery medium, such as a CD-Rom, DVD, or FTP,

would be necessary.  Juridica utilized FTP in order to produce responsive documents to Balance

Point.  (MacGill Aff. Ex. B.)  Therefore, Juridica may recover $151.50, the charges specified in

the invoices plus a sales tax of 1.00 percent, for costs of copying and uploading responsive

documents to FTP in order to produce those documents to Balance Point.  (MacGill Aff. Ex. B.)

---

[3] Both the documentary evidence and counsel's concession at oral argument confirm the accuracy of these figures.
(MacGill Aff. Ex. B.)

The remaining costs which Juridica seeks to tax against Balance Point are not taxable as "costs of making copies of any materials necessarily obtained for use in the case." Juridica seeks costs in the amounts of $12,014.86 for "Processing Initial Dataset,[4]" $5,860.02 for "Culling and Posting Resulting Data Subset," $4,893.47 for "[Optical Character Recognition (OCR)] Processing,[5]" $589.76 for "ID/Conversion of Non-Searchable Docs to Searchable," and $454.50 for "Data Collection."  (MacGill Aff. Ex. B.).  These processes involve collecting data, extracting metadata from collected images, making the data searchable, and searching those documents for relevant data.  Juridica argues that such processing costs are recoverable under section 1920(4) because such processes are necessary to make copies of electronically stored information usable and intelligible.  (Mem. in Supp. of Mot. to Reconsider Clerk's Entry on Bill of Costs Pursuant to Rule 54 at 5.)  The Court disagrees.

The plain meaning of section 1920(4) awards costs solely for "making copies." Thus, only costs for the actual act of making a copy are taxable; costs associated with preparing data to be copied or analyzing data post-copying are not covered by the statute.  See, e.g., CBT Flint, 737 F.3d at 1330 ("costs incurred in *preparing* to copy are not recoverable").  In holding that certain processing costs are not taxable under § 1920(4), the Third Circuit noted that

> [s]ection 1920(4) does not state that all steps that lead up to the production of copies of materials are taxable.  It does not authorize taxation merely because today's technology requires technical expertise not ordinarily possessed by the typical legal professional. . . . Section 1920(4) authorizes awarding only the cost of making copies.

---

[4] "Processing Data" is "[t]he automated ingestion of Electronically Stored Information  ('ESI') into a program for the purpose of extracting metadata and text; and in some cases, the creation of a static image of the source ESI files according to a predetermined set of specifications, in anticipation of loading to a database."  Sedona Conference Glossary at 36.
[5] OCR Processing is "[a] technology process that captures text from an image for the purpose of creating a parallel text file that can be associated with the image and searched in a database."  Sedona Conference Glossary at 32.

Race Tires, 674 F.3d at 169.  These processes may in fact be "essential to make a comprehensive and intelligible production of ESI," Country Vintner, 718 F.3d at 260 (analyzing and rejecting the proposition that processing costs are taxable as making copies under § 1920(4)) (internal quotation marks and citations omitted); nevertheless, each of these processing costs are not costs for "making copies" under section 1920(4).  Rather, these costs are attributable to collecting data, preparing that collected data to be copied, rendering documents searchable, and searching those documents.

Likewise, costs for "Hosting Active-Data," and "Project Management" are not costs for making copies under section 1920(4).  Costs for "Project Management" are not costs of making copies.  Juridica does not specify what tasks were involved in "Project Management;" however, costs for managing the copying or production process, although perhaps necessary to the copy making process, are not costs for the actual making of the copy.  Moreover, just as rental costs for storage of paper documents or housing and leasing photocopying equipment are not taxable as "making copies," costs for "Hosting Active-Data" are not costs for making copies.  Each of these costs may relate to the copying process, but they are not costs for "making copies" under section 1920(4).

Similarly, costs for "document unitization" are not taxable under section 1920(4).  Document unitization is the process of assembling individually scanned pages into documents.  See Sedona Conference Glossary at 47.  Although courts have held that costs for scanning documents may be taxed as "making copies" under section 1920(4), see, e.g., Race Tires, 674 F.3d at 171; BDT Products, Inc. v. Lexmark Int'l, Inc., 405 F.3d 415, 420 (6th Cir. 2005), document unitization is a process that occurs post-scanning.  Just as assembling individually photocopied papers into a document is not considered "making copies," document unitization is

a process separate from the actual act of making copies and cannot be taxed under section 1920(4). See CBT Flint, 737 F.3d at 1331-32 (concluding that deduplication is either a pre- or post-copying activity that is not itself the making of copies and, therefore, is not taxed as a cost of "making copies").

Juridica also requests costs for creation of a "defensibility binder," "electronic embedding," and "import[ing] images to ViewPoint."  (MacGill Aff. Ex. B.)  Juridica has not explained why costs for a defensibility binder ought to be taxed as "costs of making copies of any materials" under section 1920(4) and they have not explained why a defensibility binder was "necessarily obtained for use in the case."  As described above, the Court is satisfied that costs for the conversion of native files into TIFF were necessarily incurred in this case because Balance Point specifically requested that documents be produced in hard copy or .TIFF format.  Moreover, costs for uploading the responsive documents and files to FTP may be taxed as costs of making copies under section 1920(4) because copying or transferring files to a production media is a necessary component of the production of ESI in response to a discovery request.  However, Juridica has not adequately explained why costs for electronic embedding or importing images to ViewPoint were "necessarily obtained for use in the case."  Thus, the Court declines to award these costs to Juridica.  Juridica's request for any remaining costs associated with electronic discovery is likewise denied.

b.    Deposition Transcripts

Juridica urges the Court to award the Juridica-related Defendants $7,082.69 for costs for deposition transcripts in the case.  For the reasons explained below, the Court declines to award the deposition costs to Juridica.

Section 1920(2) permits taxation of "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case."  Local Civil Rule 54.1(c)(2) addresses the taxation of deposition costs and states, in relevant part,

> Unless otherwise ordered by the Court, the original transcript of a deposition, plus one copy, is taxable if the deposition was used or received in evidence at the trial, whether or not it was read in its entirety.  Costs for depositions are also taxable if they were used by the Court in ruling on a motion for summary judgment or other dispositive substantive motion.  Costs for depositions taken solely for discovery are not taxable.

Regarding fees for transcripts, Juridica requested taxation of transcript costs for nine depositions, each of which is described in the Itemization of Costs as a "[d]eposition used in defense of litigation, including in connection with drafting anticipated motion for summary judgment."  (MacGill Aff. Ex. A.)  Juridica argues that they should be awarded these costs because Juridica began incorporating those depositions into a motion for summary judgment, the drafting of which was "well underway" when Balance Point requested a voluntary dismissal of the case.  (Mem. in Supp. of Mot. to Reconsider Clerk's Entry on Bill of Costs Pursuant to Rule 54 at 2.)

Balance Point objects to Juridica's request for the costs of the deposition transcripts because neither a motion for summary judgment nor a pre-motion letter, a precondition to the filing of a motion under this Court's Individual Practices, was submitted to the Court.  (Pl. Mem. of Law in Opp'n to Def. Juridica's Mot. to Reconsider Clerk's Entry on Bill of Costs at 10.)  Balance Point further objects because, included in those costs, are additional fees and expenses for services and products that extend beyond the cost of obtaining the transcripts, including costs for obtaining copies of exhibits shown during the depositions.  (Id. at 10-11.)

- 18 -

This Court acknowledges that it has discretion to grant costs for any or all of the transcripts, as reflected in the language "[u]nless otherwise ordered by the Court . . . ," Local Civil Rule 54.1(c)(2).  Nevertheless, because none of the deposition transcripts at issue were used on any actual motion or response to a motion and no premotion letter had been submitted, the Court declines to tax the deposition costs in favor of Juridica.

## CONCLUSION

For the foregoing reasons, Juridica's request to tax costs against Balance Point is GRANTED to the extent that the Court holds that costs of the conversion of native files into TIFF of documents actually produced to a requesting party and costs for uploading responsive documents to FTP may be taxed as "costs of making copies of any materials where the copies are necessarily obtained for use in the case."  28 U.S.C. § 1920(4).  Thus, the Clerk is ordered to tax $493.97 in costs in favor of Juridica, in addition to the $690.00 the Clerk previously awarded to Juridica.  The $493.97 amount reflects the $335.93 in costs of TIFF conversion, at a rate of $0.02 per page, for the 16,630 pages of documents Juridica produced to Balance Point, plus a 1.00 percent sales tax; $6.54 for the conversion of 324 documents from PDF to TIFF at a rate of $0.02 per page, plus a 1.00 percent sales tax; and $151.50 in costs of uploading documents to FTP for production of responsive files to Balance Point, including a 1.00 percent sales tax.

Juridica's request for the remaining costs associated with electronic discovery and deposition transcripts is DENIED.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
    March 6, 2015